578 P.2d 335

STATE of New Mexico, Plaintiff-Appellee,

v.

Daniel P. BARELA, Defendant-Appellant.

No. 3228.

Court of Appeals of New Mexico.

March 21, 1978.

Writ of Certiorari Denied

April 26, 1978.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Charlotte Hetherington Roosen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of trafficking in heroin. We discuss: (1) excluded evidence; (2) a refused instruction; and (3) the trial court's refusal to permit jurors to be questioned concerning reprisals.

### Excluded Evidence

The evidence is that defendant sold heroin to a police officer who was working as an undercover investigator. According to the officer, he went to the back door of defendant's home, gave defendant $10, and was told by defendant to return to his car and wait. The officer observed defendant's actions in the rear view mirror of his car. Defendant emerged from the front door of his home, crossed the street to a trailer, entered the trailer, emerged from the trailer in a "few minutes", walked to the officer's car and delivered the heroin.

The trailer belonged to Reyes Barela, defendant's brother. The police suspected that Reyes was a major dealer in heroin. The officer knew of this suspicion prior to his transaction with defendant.

Defendant complains of three items of excluded evidence. Each item involves defendant's effort to divert the trial from an inquiry into defendant's guilt or innocence and turn the trial into a trial of the undercover officer and the police department.

The first excluded item involves the trial court's limitation, and subsequent exclusion, of questions on cross-examination of the undercover officer. These questions went to whether the officer had probable cause to obtain a search warrant of Reyes' trailer. The second excluded item was the tendered testimony of a law school professor that the officer had probable cause to obtain a search warrant.

Defendant's theory of the case was that the police department had a policy of going after major drug distributors rather than minor ones; that defendant, a drug addict, was "set-up" by the police for the purpose of offering defendant a deal, that the deal would be that charges against defendant would be dropped in exchange for defendant's cooperation in making a case against Reyes. Defendant contended that probable cause existed to search the trailer, that the failure of the undercover officer to conduct or institute a probable cause search went to the officer's credibility and thereby fortified the view that the charges against defendant were a "set-up". In substance, defendant's claim is that the excluded probable cause testimony would impeach the credibility of the officer.

■ We note that the tendered testimony of the law professor, offered for the purpose of attacking the credibility of the officer, would have been extrinsic evidence. Such was not admissible. See Evidence Rule 608(b). However, this was not the basis of the trial court's ruling.

The trial court excluded the cross-examination questions and the tendered testimony of the law professor on three grounds, all of which were correct.

■ 1. The trial court ruled the probable cause testimony was not relevant. We agree. The question of probable cause to search did not have a tendency to prove that defendant had been "set-up" by the officer; that is, that false charges had been brought. Evidence Rule 401. Defendant desired to introduce probable cause testimony on the issue of the officer's credibility. Whether the officer had probable cause to search Reyes' trailer does not tend to prove that the officer lied in connection with defendant's sale of heroin to the officer.

■ 2. Even if relevant, the trial court also excluded the probable cause testimony on the basis that it confused the issues and would mislead the jury. The evidence was properly excludable for this reason. Evidence Rule 403. There was no abuse of discretion in this ruling.

■ 3. Even if relevant, the trial court excluded the probable cause testimo-

ny on the basis that probable cause to search Reyes' trailer was an issue collateral to the charges being tried. The extent to which evidence on a collateral issue is permitted is within the trial court's discretion. *State v. Alderette*, 86 N.M. 600, 526 P.2d 194 (Ct.App.1974). There was no abuse of discretion in this ruling.

■ The third excluded item was the tendered testimony of Dr. Rand. The tender had two aspects. The first aspect would have been testimony that New Mexico law enforcement officials customarily offer "deals" to addicts if they would testify for the State against other offenders or suppliers. Dr. Rand admitted to having no personal knowledge of police procedures and having no specialized knowledge or experience in police procedures. This testimony went to his qualification to testify. On this basis, the trial court could properly rule that Dr. Rand was not qualified to testify as to the first aspect. There was no abuse of discretion in this ruling regardless of whether the ruling was based on lack of qualification as an expert or insufficient perception as a lay witness. *State v. Brionez*, 91 N.M. 290, 573 P.2d 224 (Ct.App. 1977); see *State v. Ellis*, 89 N.M. 194, 548 P.2d 1212 (Ct.App.1976).

The second aspect of the tendered testimony of Dr. Rand went to the social effects of drugs on addicts with emphasis on the susceptibility of an addict to police manipulation because of the addiction. The trial court ruled that Dr. Rand was an expert in the sociological aspects of addict behavior.

■ Defendant desired to have Dr. Rand testify "as to what heroin addiction is and what reactions individuals have to heroin addiction . . ."; "to explain a condition as prejudicial as heroin addiction to the jury by expert testimony in order to assure ourselves of the absence of bias against the defendant." The trial court rejected this tender because defendant's addiction was not relevant, because defendant interjected his addiction into the case and because the jurors, on voir dire, indicated they would not give greater weight to the officer's testimony than they would to defendant's

testimony. In excluding this aspect of the tendered testimony, the trial court ruled it was no more than a "pitch for sympathy". We agree, and hold there was no abuse of discretion in excluding testimony which would have explained heroin addiction. *State v. Brionez*, supra.

*Refused Instruction*

■ Defendant tendered, and the trial court refused, a proposed instruction that would have told the jury that narcotics addiction was not a crime. This issue is argued on two theories; that the instruction would have ameliorated any tendency of the jury to find defendant guilty because he was a heroin addict and it was a theory of the case instruction. The fact that addiction is not a crime says nothing, and the instruction would have conveyed nothing, about defendant's theory of the case. See the early part of this opinion for defendant's theory of the case. Nor was any "theory of the case" claim made in the trial court. N.M.Crim.App. 308. The instruction can be viewed as directed to defendant's credibility. Special credibility instructions are properly refused because the general credibility instruction, which was given, is sufficient. *State v. Wise*, 90 N.M. 659, 567 P.2d 970 (Ct.App.1977); *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct.App. 1977).

*Refusal to Permit Jurors to be Questioned*

Shortly prior to the return of the verdict, the trial court received a note from the jury which read:

Your Honor, we have reached a verdict but one or more jurors feels [fears?] some kind of reprisal. How should we proceed?

The note was signed by the foreman.

No immediate action was taken in connection with the note. The jury returned; the verdict of guilty was read. At defendant's request the jurors were polled; all agreed upon the verdict. Defendant requested that the jury not be dismissed until questioned about the note. This request

was denied; the jurors were excused from further service in the case, but told to remain in the jury room until the courtroom was cleared.

After the courtroom was cleared, the note was read aloud in the presence of defendant and his counsel. Defendant asked that the jury be recalled (the jurors were still in the jury room). Defendant wished to question the jurors individually to determine which jurors were afraid of reprisals and the source of the fear. Defendant contended the note raised the possibility of improper contact with the jurors, the possibility of improper influence or tampering, and the possibility of prejudice to the defendant. The trial court denied the motion to recall the jurors.

Defendant asserted to the trial court that questioning of the jurors about the note was within the trial court's discretion. The trial court ruled that if the matter was within its discretion, it would not permit the questioning. On appeal, defendant claims that the trial court abused its discretion in not conducting an inquiry of some kind, and that the failure of the trial court to take some action in connection with the note denied defendant a fair trial. We note the appellate issue shifts from defendant's request to question the jurors, to a claim that the trial court erred in failing to question the jurors. We do not consider the shift of any consequence; the issue is whether the failure to conduct an inquiry concerning the note denied defendant a fair trial.

Defendant points out that neither the court nor the parties had any information concerning the feared reprisal; that the fear might be on the basis of unauthorized communication with jurors or other form of tampering. "The crucial fact is that the court failed to delve into the myriad of uncertainties which the note suggested, despite defendant's repeated urgings to do so." We do not agree that the failure to question the jurors was in any sense crucial; nor do we agree that the note raised a myriad of uncertainties.

Several times during the trial, the jurors were instructed not to discuss the case with anyone. During cautionary instructions immediately after the jury was sworn, the jurors were told: "Do not suffer yourself to receive any outside information about the case whatsoever." The jurors were told that if a person attempted to talk to them about the case, the jurors were to state they could not listen to anything outside of the courtroom. The jurors were told that if anyone persisted in trying to talk about the case, the jurors were to advise the court of that fact, at the earliest opportunity, so that the court could take appropriate steps to see there was no effort to tamper with the jury. These instructions were repeated when jury deliberation was interrupted so that the jurors might be taken to supper.

There is nothing indicating there was any outside contact with jurors; nothing indicating there was any tampering or attempt to influence jurors. In light of the strong admonition to the jurors to report any effort to talk about the case, the trial court considered the note to refer to a fear of future reprisals. The trial court's understanding is borne out by the fact that the jurors were returned to the courtroom, advised by the court that they would be given police escorts to their homes and advised that if any juror received a threat, the threat was to be reported "at once" to the district attorney. The trial court went on to explain that it was aware that jurors often feared reprisals but, in the judge's long experience, as an attorney, reprisals had never occurred in Santa Fe County. The trial court then asked if there were any questions; the only question went to the date the jurors were to report for the next case.

■ We agree with the trial court that the note referred to a fear of reprisals in the future, that is, retaliation for their verdict, and that the note was not a sufficient basis for questioning the jurors concerning the possibility of tampering. Thus, inquiries of jurors, in cases where there have been improper contact with a juror, are not in point. See *State v. Gutierrez*, 78 N.M. 529, 433 P.2d 508 (Ct.App.1967).

The trial court did not rule that it would not permit an inquiry of jurors if there was some indication of improper contact with a juror. Its instructions were to the contrary. In addition, the trial court advised defendant that he was free to contact jurors and question them concerning improper contacts. See Evidence Rule 606(b). If a factual basis for such an inquiry had been presented, the trial court would have conducted an inquiry. See *State v. Martinez*, 90 N.M. 595, 566 P.2d 843 (Ct.App.1977).

This issue reduces, then, to a failure of the trial court to permit an inquiry into a fear of retaliation for the guilty verdict. We do not have the additional factor, present in *State v. Maes*, 81 N.M. 550, 469 P.2d 529 (Ct.App.1970), of a juror's failure to disclose knowledge of a defendant. See *State v. Martinez*, supra.

When the only thing before the trial court is a fear of retaliation for a verdict which has already been reached, defendant is not prejudiced by a failure to inquire into the source of the fear. Such an inquiry would go to a juror's mental processes and emotions; such an inquiry is prohibited by Evidence Rule 606(b). As stated in the federal Advisory Committee's Note to Evidence Rule 606(b), "The mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment." Inquiry as to a juror's inner reaction in arriving at a verdict is prohibited. Similarly, inquiry into a fear of reprisal after reaching a verdict is not required. The jurors were not to concern themselves with the consequences of the verdict and were so instructed. U.J.I.Crim. 50.06.

The trial court did not err in failing to conduct an inquiry and did not err in denying a mistrial motion based on the lack of inquiry.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.