2001-NMCA-052

30 P.3d 368

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Sandra CASTAÑEDA, Defendant–
Appellant.**

**No. 21,091.**

Court of Appeals of New Mexico.

April 26, 2001.

Certiorari Denied, Nos. 26,026 and 26,987, June 18, 2001 and July 11, 2001.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Public Defender, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Defendant was convicted of three counts of child abuse and one count each of aggravated driving while under the influence (refusal); driving on the wrong side of the road; no insurance; and resisting, evading, or obstructing an officer. She was acquitted of two counts of child not properly restrained. Defendant now appeals her convictions.

{2} Defendant makes five arguments on appeal: (1) that her convictions under the general child abuse statute should be reversed because the legislature intended the DWI statute to govern in cases of child abuse involving operation of a motor vehicle while intoxicated; (2) that she should not have been convicted of three counts of negligent child abuse because there was evidence of only one negligent act, and there is no evidence that the legislature ever intended the crime of negligent child abuse to be fragmented into multiple crimes; (3) that the State's evidence of child abuse was insufficient to prove criminal negligence because the law requires a finding of wanton conduct to support a criminal conviction for a negligent act; (4) that a juror's attempt to qualify his vote during polling cast doubt on the verdict, and the jury inappropriately shifted the burden of proof to Defendant to show that she was not intoxicated; and (5) that the district court abused its discretion when it refused to qualify a defense witness as an expert and refused to allow that witness to give his expert opinion about Defendant's level of intoxication based on his review of Defendant's videotaped performance of field sobriety tests. We reverse on the second issue and remand with instructions to the district court to merge Defendant's three convictions of child abuse into one conviction of child abuse. We affirm on all other issues.

## FACTS

{3} Defendant was driving home from a wedding reception when she was stopped by Deputy Nevarez for making an illegal turn and driving in the wrong lane. Nevarez testified that when he reached Defendant's side window, he smelled alcohol. He testified further that Defendant's eyes were bloodshot and watery and that she appeared to be intoxicated. There was testimony that Defendant did not appear to be intoxicated when she left the wedding and that her level of intoxication could have been as low as .02 when she was driving, based on the amount of alcohol she consumed, the rate of consumption, and other relevant factors. Nevarez testified that he saw three children in the car whom he later learned were ages 8, 9, and 14. Defendant's mother was also in the car. Nevarez testified that no one in the car was wearing a seat belt. Testimony conflicted as to whether the children were in their seatbelts from the time the car left the wedding. When Nevarez asked Defendant for her driver's license, she first fumbled through her cards and gave him an unrelated card, then eventually found her license and gave it to him. When asked whether she had been drinking, Defendant answered that she had been at a wedding and had a pitcher of

beer during the reception. She told Nevarez she was drunk.

{4} Nevarez attempted to administer field sobriety tests and the horizontal gaze nystagmus test. In his opinion, Defendant did not successfully complete the field sobriety tests because she was staggering and stumbling, and she showed signs of nystagmus. When he later tried to administer the breathalyzer test, Defendant told him that she was drunk and did not need to perform any tests.

## DISCUSSION

### I. The General/Specific Statute Rule

{5} Defendant argues that her convictions for child abuse should be reversed because the legislature intended the DWI statute to govern in cases of child abuse involving operation of a motor vehicle while intoxicated. Defendant urges us to apply the general/specific statute rule, which states that if one statute addresses a subject generally, and another statute addresses the same subject specifically, the more specific statute controls and a defendant cannot be charged with or punished for violation of both statutes. *State v. Cleve*, 1999–NMSC–017, ¶¶ 17, 25, 127 N.M. 240, 980 P.2d 23. In determining whether the general/specific statute rule applies, we undertake the two lines of analysis set forth in *State v. Guilez*, 2000–NMSC–020, ¶ 7, 129 N.M. 240, 4 P.3d 1231: quasi-double-jeopardy analysis and preemption analysis.

### A. Quasi–Double–Jeopardy Analysis

■ {6} Under quasi-double-jeopardy analysis, we first determine whether the prohibited conduct under the general and specific statutes is unitary. *Id.* ¶ 12. Defendant was charged with two crimes: (1) placing a child in a situation that may endanger the child's life or health, *see* NMSA 1978, § 30–6–1(C)(1) (1997); and (2) refusing to submit to alcohol testing at a time when she was found to be driving while under the influence of alcohol, *see* NMSA 1978, § 66–8–102(D)(3) (1999). The test for unitary conduct is whether the two events are "sufficiently separated by time or space, or whether the quality and nature of the acts, objects, and results can be distinguished." *State v.*

*Davis*, 2000–NMCA–105, ¶ 6, 129 N.M. 773, 14 P.3d 38.

{7} Here we find that Defendant's conduct was not unitary. The jury could have found Defendant guilty of child abuse on the basis of conduct other than DWI, such as her failure to properly restrain the children. *See Guilez*, 2000–NMSC–020, ¶ 13 (finding non-unitary conduct where conduct supporting child abuse was completed, although continuing, when defendant placed child in vehicle without child restraint device, while conduct supporting reckless driving did not begin until defendant began driving carelessly). Defendant argues that failure to restrain the children cannot be the basis for the child abuse charge because the jury acquitted her on the charges of child restraint violations. We disagree. We can only speculate as to the reasons for the jury's decision to acquit, and inconsistent verdicts are not necessarily irrational or erroneous. *See State v. Padilla*, 86 N.M. 282, 284, 523 P.2d 17, 19 (Ct.App. 1974). Because the conduct is non-unitary, we next determine whether the legislature intended to preempt the child abuse statute.

### B. Preemption Analysis

■ {8} Preemption analysis focuses on whether the legislature intended the DWI statute to operate as an exception to the child abuse statute. *Cleve*, 1999–NMSC–017, ¶ 27. In other words, did the legislature intend to limit prosecutorial discretion such that a person who drives intoxicated with a child in the car is charged only under the DWI statute? To answer this question, we employ traditional rules of statutory construction. *Id.* ¶¶ 26–27. Looking first at the elements of the two crimes, it appears that the child abuse statute and the more specific DWI statute criminalize some of the same conduct. When a person drives while intoxicated with a child in the car, he arguably also "knowingly, intentionally or negligently, and without justifiable cause, ... permit[s] a child to be ... placed in a situation that may endanger the child's life or health" in violation of the child abuse statute. Section 30–6–1(C). Thus, the two statutes appear to be in conflict. However, we must determine whether the legislature intended to repeal

the child abuse statute, as it applies to children in vehicles driven by persons under the influence, when it enacted the Motor Vehicle Code, generally, and the DWI statute, specifically. *See Guilez*, 2000–NMSC–020, ¶ 15.

{9} We are guided by *Guilez*, in which a defendant was charged with both child abuse and reckless driving. *Id.* ¶ 1. Holding that the legislature did not intend to repeal the child abuse statute when it enacted the reckless driving statute, *Guilez* noted that the two statutes have distinct purposes. "The child abuse statute was designed to give greater protection to children than adults" and evidences an intent to impose more severe penalties for endangering a child's safety than for jeopardizing another adult's safety. *Id.* ¶ 17. "[T]he reckless driving statute punishes conduct that might harm either a member of the general public or any property." *Id.* Neither the reckless driving statute addressed in *Guilez* nor the DWI statute at issue here provides extra protection for children. *See id.* ¶ 20.

{10} Defendant argues that the legislature intended the DWI statute to be an exception to the child abuse statute. As support for her position, she notes that the legislature increased DWI penalties twenty-four years after it enacted the child abuse statute. She argues that the increase in penalties was intended to preempt the field when the danger was caused by drunk driving. We are not persuaded. The legislature increased the penalties for child abuse at the same time it was increasing the penalties for DWI. In 1989 the legislature changed "child abuse not resulting in great bodily harm" from a fourth degree felony to a third degree felony. *See* 1989 N.M. Laws, ch. 351, § 1. In 1988 the legislature increased the penalties for second or subsequent DWI, 1988 N.M. Laws, ch. 56, § 8, and in 1993 it added the misdemeanor with which Defendant was charged—aggravated DWI. 1993 N.M. Laws, ch. 66, § 7. These amendments demonstrate that the legislature intends to protect two distinct interests through two distinct statutory schemes; the child abuse statute protects children from abuse, and the DWI statute protects the general public (including children) from intoxicated drivers.

{11} Defendant argues that the legislature intended a defendant to be charged only with a violation of the Motor Vehicle Code for driving while intoxicated with a child as a passenger. She hypothesizes that, had the legislature intended otherwise, prosecutors would be encouraged to charge child abuse along with every motor vehicle violation that might pose a danger to a child, such as exceeding the speed limit or failure to yield. We see no reason to fear such extreme prosecutorial zeal. Child abuse requires criminal negligence, *Santillanes v. State*, 115 N.M. 215, 223, 849 P.2d 358, 366 (1993), and ordinary traffic violations do not require such a mental state. We hold that the legislature did not intend to limit prosecution under either or both statutes.

## II. Single Statute Unit of Prosecution

{12} Defendant argues that the district court should have merged the three counts of child abuse because the abuse of her three children occurred during a single criminally negligent act and therefore constituted only one violation of the statute. We agree and reverse two of Defendant's convictions for child abuse.

{13} The analysis for single-statute unit-of-prosecution cases is set forth in *State v. Barr*, 1999–NMCA–081, ¶ 11, 127 N.M. 504, 984 P.2d 185. Where an accused is charged with multiple violations of a single statute and raises a double jeopardy challenge, we must determine whether the legislature intended to permit multiple charges and punishments under the circumstances of the particular case. *Id.* ¶¶ 11–13. If the statute does not clearly define the unit of prosecution, we must determine whether the different offenses are "separated by sufficient indicia of distinctness[.]" *Id.* ¶ 15 (quoting *Swafford*, 112 N.M. at 13, 810 P.2d at 1233). Such indicia include: "(1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *Barr*, 1999–NMCA–081, ¶ 16. Although " 'multiple victims will likely give rise to multiple offenses[,]' " *id.* (quoting *Herron*

*v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991)), this is not always the case, especially if the other factors militate against multiple units of prosecution. *Barr,* 1999–NMCA–081, ¶ 22.

■ {14} In the present case, Defendant committed one continuous act amounting to child abuse—driving while intoxicated with children in the vehicle that were not restrained. The time and location of the alleged child abuse was the same for each of the three children. Defendant's intent in driving while under the influence was unitary. These circumstances are analogous to those in *State v. Cuevas,* 94 N.M. 792, 617 P.2d 1307 (1980), *overruled on other grounds by State v. Pitts,* 103 N.M. 778, 780, 714 P.2d 582, 584 (1986), which held that a teacher demonstrating how to drink tequila to twenty underage students could be convicted of only one count of contributing to the delinquency of a minor (CDM). We therefore hold that, under the circumstances of this case, Defendant was subject to only one charge and one punishment for child abuse.

■ {15} We emphasize that our holding is limited to the facts of this case. It is clear that single-statute unit-of-prosecution issues should be decided on a case-by-case basis. *Compare Cuevas,* 94 N.M. at 794–95, 617 P.2d at 1309–10 (limiting conviction to one count of CDM despite presence of twenty minors), *with Barr,* 1999–NMCA–081, ¶ 23 (affirming convictions on seven counts of CDM where an adult engaged in discrete acts with seven juveniles in various configurations of involvement). We further emphasize that a single unit of prosecution in a child abuse case involving multiple victims is only appropriate where the children have not actually been harmed. Pursuant to the statute, a person may be guilty of child abuse even if the child is not actually harmed. *See* § 30–6–1(C)(1). If actual harm results from child abuse, however, the focus shifts from the actions of the abuser to the result of those actions, and each child harmed is a distinct victim with unique injuries. Under such circumstances, it is entirely appropriate to charge the perpetrator with a separate count of child abuse for each victim.

{16} Our analysis is consistent with our recent holding on the issue of single-statute, unit-of-prosecution in *State v. House,* 2001–NMCA–011, 130 N.M. 418, 25 P.3d 257. In that case the defendant argued that his single act of unlawfully operating a motor vehicle, in violation of the vehicular homicide statute, NMSA 1978, § 66–8–101(A) (1991), should have resulted in a single charge, despite the fact that his act resulted in the deaths of four people. *House,* 2001–NMCA–011, ¶ 17. In rejecting defendant's argument, we concluded that "when determining the appropriate unit of prosecution, the focus is upon the prohibited act[.]" *Id.* ¶ 20. Because the relevant statute intended to punish homicide rather than the unlawful operation of a motor vehicle, it was proper to charge defendant with four counts of vehicular homicide. *Id.*

{17} Similarly, in the case of child abuse not resulting in death or great bodily harm, the child abuse statute permits punishment of adult conduct that *may* cause harm. A defendant may be found guilty of third degree child abuse even if the child was never actually in danger or even likely to suffer harm. However, when death or great bodily harm results, the statute increases the penalties to those imposed for a first degree felony. Section 30–6–1(C). This increase in penalty evidences an intent to punish the result of adult conduct rather than just the conduct.

{18} We hold that the district court should have merged the three counts of child abuse because the abuse of the three children occurred during a single criminally negligent act and therefore constituted only one violation of the statute.

## III. Substantial Evidence of Criminal Negligence

{19} Defendant argues that there was insufficient evidence to support the jury's finding that she acted with the requisite reckless disregard essential to a conviction for criminally negligent child abuse. Relying on *State v. Yarborough,* 1996–NMSC–068, 122 N.M. 596, 930 P.2d 131, Defendant contends that the State had to prove that she acted with a conscious disregard of a risk to a child, know-

ing that the risk would *probably* result in injury to the child. It appears that Defendant's argument is rooted in the concern that conviction for child abuse should not be based on mere negligence. This is a valid concern, as demonstrated by *Yarborough,* which emphasizes that criminal conduct must be based on a criminal mental state. *Id.* ¶ 19. However, in the context of child abuse, the concern is resolved by the statute itself and by the relevant jury instruction.

{20} The child abuse statute imposes penalties for persons who "knowingly, intentionally or negligently" engage in specified abusive conduct, Section 30–6–1(C), and "negligently" is defined as "criminal negligence [which] means that a person knew or should have known of the danger involved *and acted with a reckless disregard for the safety or health of the child.*" Section 30–6–1(A)(3) (emphasis added). The relevant instruction submitted to the jury in this case stated: "For you to find that the Defendant acted recklessly in this case, you must find that she knew or should have known that her conduct created a substantial and foreseeable risk, that she disregarded that risk and that she was wholly indifferent to the consequences of her conduct and to the welfare and safety of others." *See* Rule 14–604 NMRA 2001. Pursuant to these definitions, it is clear that the jury was properly instructed and that Defendant's conviction of child abuse was necessarily based on a finding of the appropriate mens rea. *See Yarborough,* 1996–NMSC–068, ¶ 20 (stating that in order to prove criminal negligence in the context of involuntary manslaughter, state must prove that defendant drove with willful disregard of the rights or safety of others).

{21} The next question is whether there was substantial evidence to support the jury's finding that Defendant acted with reckless disregard for the safety of her children. We review the record to determine whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of the charged crime. *State v. Griffin,* 116 N.M. 689, 693, 866 P.2d 1156, 1160 (1993). Be-

cause Defendant challenges only the element of recklessness, we limit our review to the evidence supporting that element. We view the evidence in the light most favorable to the State, resolving all conflicts and indulging all inferences in favor of the verdict. *State v. Carrasco,* 1997–NMSC–047, ¶ 11, 124 N.M. 64, 946 P.2d 1075. "Since the element of intent involves the state of mind of the defendant it is seldom, if ever, susceptible to direct proof, and may be proved by circumstantial evidence." *State v. Manus,* 93 N.M. 95, 98, 597 P.2d 280, 283 (1979), *overruled on other grounds by Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982).

{22} Deputy Nevarez testified that Defendant smelled of alcohol, that her eyes were bloodshot and watery, that her speech was slurred, and that she staggered and stumbled during the field sobriety tests. He also testified that Defendant admitted to drinking a pitcher of beer prior to driving and that she declared herself to be "too drunk" to complete the field sobriety tests. Deputy Nevarez further testified that he observed Defendant driving on the wrong side of a divided highway. This circumstantial evidence, in conjunction with the evidence that Defendant's children were in the car Defendant was driving, constitutes substantial evidence that Defendant acted with reckless disregard for the safety of her children.

## IV. Juror's Comments During Polling

{23} Defendant argues that a juror's comments during the polling of the jury cast a cloud on the validity of the verdict and entitle Defendant to a new trial under the Sixth Amendment of the Federal Constitution and N.M. Const. art. II, §§ 12, 18. We review the denial of a motion for a new trial for abuse of discretion. *State v. Ferguson,* 111 N.M. 191, 192, 803 P.2d 676, 677 (Ct.App. 1990).

{24} The objectionable juror comments actually occurred before the jury was polled when the court asked the foreperson to state the jury's vote on each count. In response, the foreperson offered considerable detail regarding the jury's view of the evidence. On the count charging aggravated DWI, the foreperson stated,

We felt [Defendant] had numerous chances to take a breathalyzer test ... and she several times answered, no, she didn't want to take it. And we felt that pretty much condemned her to being intoxicated because she didn't prove otherwise. Now, we did feel that maybe she perhaps wasn't as intoxicated as the deputy had [inaudible] that she was, but she didn't ... seize the opportunity to prove that fact.

{25} Defendant maintains that these comments indicate that there was not a unanimous finding of guilt beyond a reasonable doubt. In addition, she argues that these comments reflect an impermissible shifting of the burden of proof by the jury; instead of requiring the State to prove Defendant's guilt, the jury required the Defendant to prove her innocence. The district court denied Defendant's motion for a new trial, relying on Rule 11–606(B) NMRA 2001. That rule states in relevant part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith[.]

The district court also relied on *State v. Barela*, 91 N.M. 634, 639, 578 P.2d 335, 340 (Ct.App.1978), in which the court interpreted Rule 11–606(B) and held that " '[t]he mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment.' " (Quoting Advisory Committee's Note to Evidence Rule 11–606(B)). The court went on to state, "[i]nquiry as to a juror's inner reaction in arriving at a verdict is prohibited." *Barela*, 91 N.M. at 639, 578 P.2d at 340. Thus, the rule clearly precluded the district court's consideration of the foreperson's comments.

{26} Defendant argues that Rule 11–606(B) does not apply to this case, citing *State v. Holloway*, 106 N.M. 161, 740 P.2d 711 (Ct.App.1987). In that case, a juror ex-

pressed uncertainty about the verdict. In this case, the foreperson did not express any uncertainty, and in fact all the jurors stated unequivocal agreement with the verdict when they were polled. In contrast to the circumstances in *Holloway*, the foreperson here shared some of the jury's thought process in deliberation. This is precisely the kind of evidence Rule 11–606(B) prohibits. When there is no uncertainty as to the unanimity of the verdict, it is unnecessary and impermissible for the trial judge to delve into the reasoning behind the jury's verdict.

{27} Defendant also cites *State v. Apodaca*, 1997–NMCA–051, ¶ 26, 123 N.M. 372, 940 P.2d 478, for the proposition that Rule 11–606(B) does not apply when a judge is not conducting " 'an inquiry into the validity of a verdict' " but is determining "whether [to accept] a verdict in the first instance." In that case, "[t]he issue was the vote of each juror at the time that the judge was making her inquiry, not 'any matter or statement occurring during the course of the jury's deliberations.' " *Id.* (quoting Rule 11–606(B)). In the case at bar, there was no question about the validity or certainty of the vote of each juror. The statements made by the foreperson went to the jury's deliberation process. We hold that the district court did not err by failing to investigate the juror's statements, and that it exercised sound discretion in denying Defendant's motion for a new trial.

## V. Qualification of Expert Witness

{28} The district court refused to qualify Sam Roman as an expert witness and prohibited him from giving an expert opinion about whether Defendant was intoxicated based on his viewing of the videotape taken by the arresting officer. We review the district court's decision for abuse of discretion. *State v. Hernandez*, 115 N.M. 6, 24, 846 P.2d 312, 330 (1993).

{29} Though the district court refused to qualify Roman as an expert and did not allow him to give an opinion about Defendant's level of intoxication based on the videotape, it did allow him to testify at length on several related topics. Roman, a certified trainer for

breath analysis techniques, testified about how the body metabolizes alcohol and possible blood alcohol levels given a person's weight, size and the amount of alcohol consumed. He testified that Defendant's blood alcohol content could have been as low as .02 at the time she was stopped by Deputy Nevarez.

{30} The district court agreed to qualify Roman as an expert only if he could establish his "specific training in how people are affected under the influence of alcohol." The district court distinguished that type of training from training in the operation of breathalyzer machines. Roman testified that he had received approximately 100 hours of professional training over a period of eight years in determining whether people are under the influence of alcohol. This training included how the body metabolizes alcohol, how alcohol affects the human body and what causes the body to react the way it does. He claimed that he was qualified to observe a person suspected of being under the influence of alcohol to determine whether or not he is, in fact, impaired.

{31} The district court did not allow Defendant to elicit Roman's opinion about Defendant's level of intoxication based on the videotape because his expertise was in the field of instrumentation, not in the fields of biology, physiology or chemistry. He had no training in field sobriety tests. The district court concluded that Roman's opinion about the degree of Defendant's impairment would be no more helpful to the jury than that of a lay person. We hold that the district court acted within its discretion when it made this determination.

## CONCLUSION

{32} We remand with instructions to the district court to merge Defendant's three convictions of negligent child abuse into one conviction, and we affirm on all other issues.

{33} **IT IS SO ORDERED.**

LYNN PICKARD and M. CHRISTINA ARMIJO, Judges, concur.