This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **NO. 28,699**

**FREDDIE M. MONTANO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

Gary K. King, Attorney General
Daniel F. Haft, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Following a fight over a parking spot, Defendant was charged with aggravated battery, aggravated assault with a firearm, retaliation against a witness, and two counts of child abuse. A jury found him guilty of all the charges except aggravated assault with a firearm, of which he was acquitted. Defendant now appeals, raising issues related to the sufficiency of the evidence, double jeopardy, and failure to properly instruct the jury on the elements of retaliation against a witness. Defendant also claims that the district court abused its discretion by allowing rebuttal expert witness testimony concerning polygraphs. We conclude Defendant's two convictions for child abuse violate the prohibition against double jeopardy, and we therefore remand with instructions to vacate one of those convictions. We affirm on all remaining issues.

The factual and procedural background is familiar to the parties, and because this is a memorandum opinion, we do not provide a detailed background section. We provide details as necessary to our discussion of each issue raised by Defendant.

**DISCUSSION**

**Defendant's Convictions Are Supported by Substantial Evidence**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*,

2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.  This review "requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction.  We determine whether a rational fact[]finder could have found that each element of the crime was established beyond a reasonable doubt."  *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]"  *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted).  We do not "weigh the evidence or substitute [our] judgment for that of the fact finder as long as there is sufficient evidence to support the verdict."  *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.  Finally, we note that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured."  *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986).  Defendant argues that his convictions for two counts of child abuse by endangerment, retaliation against a witness, and aggravated battery against Jose Luis Gonzales are not supported by substantial evidence and must be reversed.  We are not persuaded, and we address each of Defendant's arguments in turn.

3

**Child Abuse by Endangerment**

Defendant first argues that his two convictions for child abuse by endangerment must be reversed because there was no risk of harm created by his conduct. In this case, Defendant was charged with "knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health[.]" NMSA 1978, § 30-6-1(D)(1) (2005) (amended 2009). The jury was instructed, in relevant part, that the State had to prove the following beyond a reasonable doubt:

1. [Defendant] caused Jose Luis Gonzales, Jr. [and Mayelli Gonzales] to be placed in a situation which endangered the life or health of Jose Luis Gonzales, Jr. [and Mayelli Gonzales];

2. [D]efendant acted intentionally;

3. Jose Luis Gonzales, Jr. [and Mayelli Gonzales were] under the age of 18;

4. This happened in New Mexico on or about the 6th day of March, 2007.

Thus, to convict under the theory of child abuse by endangerment, the State was required to prove beyond a reasonable doubt each of the elements above. Proof of child endangerment is sufficient for a conviction if there is a "reasonable probability or possibility that the child will be endangered." *State v. Chavez*, 2009-NMSC-035, ¶ 16, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted). We

4

have said that child abuse can also be found when the conduct creates indirect danger to a child. *See State v. Castañeda*, 2001-NMCA-052, ¶ 22, 130 N.M. 679, 30 P.3d 368 (child abuse conviction upheld where intoxicated mother drove recklessly on wrong side of the road while her children were unrestrained in the car, thereby exposing them to the possibility of danger).

In this case, Monica Gonzales testified that Defendant, who had been hiding in her bedroom closet, crawled out, pointed a gun at her and told her that if she said anything he would kill her and her two children. Gonzales had put herself between Defendant and her children who were hiding under a crib about six feet away from Defendant. Gonzales testified that she was afraid that she could get shot or that her children could get hurt.

At the close of trial, along with the element instructions discussed above, the jury was given a verdict form for each count of child abuse. The jury found Defendant guilty on both counts. In addition, the jury was given a separate special verdict form for each count which asked, "Do you unanimously find beyond a reasonable doubt that a firearm was used in the commission of child abuse as charged in Count 2 [and Count 3]?" The jury answered "No" on each of these special verdict forms. It is on the basis of the jury's response to the questions on the special verdict that Defendant contends that the State failed to present evidence that he placed the two

children in the direct line of physical danger. Defendant concedes that if the jury found that he pointed a gun at Gonzales and her children, his conduct would provide a sufficient basis to uphold a child abuse by endangerment conviction. He argues, however, that because the jury here specifically found that he did not use a gun in the commission of the child abuse case, the State necessarily failed to prove all the elements of child abuse by endangerment beyond a reasonable doubt. For the reasons that follow, we are not persuaded.

Even if the jury's finding on the special verdict form that a firearm was not used in the commission of child abuse was inconsistent with its finding of guilt on the child abuse charges, as we have previously said, we review the verdict of conviction and not that of the acquittal. *See State v. Leyba*, 80 N.M. 190, 195, 453 P.2d 211, 216 (Ct. App. 1969) (noting that "we may only speculate as to why the jury acquitted [the] defendant" of one of the charges against him and that this Court's "business is to review the verdict of conviction"); *see also Chavez*, 2009-NMSC-035, ¶ 44 (the fact that the defendant was acquitted of child abuse resulting in death did not alter the analysis for determining whether substantial evidence existed to support his conviction for child abuse by endangerment); *State v. Ruiz*, 119 N.M. 515, 521-22, 892 P.2d 962, 968-69 (Ct. App. 1995) (where jury convicts on one of two alternative counts and acquits on the other, the court reviews only the conviction and not the

acquittal); *State v. Fernandez*, 117 N.M. 673, 680, 875 P.2d 1104, 1111 (Ct. App. 1994) (even if acquittal on DWI charge was irreconcilable with conviction for intimidating a witness, the court only determines whether there is ample evidence to support the conviction); *State v. Brown*, 113 N.M. 631, 634, 830 P.2d 183, 186 (Ct. App. 1992) (noting also that acquittal, though irreconcilable with conviction on a different count, does not require conviction to be set aside). The question we address, therefore, is whether there was sufficient evidence for a rational jury to find each element of the crime of child abuse beyond a reasonable doubt. *See Kent*, 2006-NMCA-134, ¶10 ("Substantial evidence review requires analysis of whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction."). As we have noted, in this case, Gonzales testified that Defendant pointed a gun at her and told her that if she said anything he would kill her and her two children, and Defendant concedes that this is sufficient to constitute child abuse.

We observe that another jury instruction in this case may be relevant to our analysis on this issue. At the close of trial, in addition to the two counts of child abuse, the jury was instructed on aggravated assault on Gonzales by use of a deadly weapon. One of the five elements of that instruction required the jury to find beyond a reasonable doubt that "[D]efendant used a handgun[.]" The instruction for child

7

abuse by endangerment had no such requirement. Nevertheless, the parties submitted special verdicts asking if the jury found that a firearm was used in the commission of aggravated assault as well as for each of the child abuse charges. It appears from our review of the record that the jury may have been confused by the instructions and these separate special verdict forms. During deliberations, the jury sent out a question asking why they had been given the special interrogatory with respect to the aggravated assault charge. The district court believed that the jury was confused and told counsel, "My reaction is that they can disregard the interrogatory." The State responded that the special verdict was added so that it could ask for an extra year of penalty if the jury found that Defendant did use a handgun, but he agreed that the special verdict did not "make much sense to [him] either." The court then brought the jury in, and with agreement of counsel, told the jury that it had to find that the State had proved each element in the aggravated assault instruction and then said, "you still have to fill out that special interrogatory." Ultimately, the jury found Defendant not guilty of aggravated assault by use of a deadly weapon. The jury in this case may have decided that the State did not prove another of the aggravated assault elements beyond a reasonable doubt and, therefore, had to necessarily find that a firearm was not used on the special verdict form pursuant to the district court's instruction. And the jury may have determined that it had to answer "No" on the special verdict forms

8

for child abuse in order to be consistent with the aggravated assault instruction. Alternatively, the jury may have concluded that Defendant used another weapon in the commission of the crime. Regardless, Defendant's guilt of child abuse may have been plain, and the jury may have decided to answer the special verdict forms in the negative for any number of reasons. There was sufficient evidence that Defendant placed the two children "in a situation which endangered [their] life or health."

**Retaliation Against a Witness**

Defendant next contends that there was insufficient evidence to convict him of retaliation against a witness because Gonzales was unable to identify him as the person who threatened her. Specifically, Defendant argues that Gonzales testified that the two men from the previous day's fight—Defendant and his twin brother, Victor—stopped at her screen door. One man apologized to her, and the other asked why he was apologizing and said that he was going to let Gonzales "off this time" because she had her kids, but that when he saw her "on the outs that he was going to murder [them]." Defendant argues that during her testimony, Gonzales did not specifically identify him as the person who threatened to murder her and, therefore, his conviction for retaliation must be reversed. We disagree with Defendant's characterization of the evidence.

9

The evidence linking Defendant to the threatening remarks was as follows. Defendant and Victor are identical twins and have the same names. Gonzales testified that both men had been inside her apartment the previous day. One of the men was behind the door, grabbed Gonzales by her face, and told her not to say anything or he would kill her and her kids. The other man, Defendant, was hiding in Gonzales' closet. He did not have his shirt on. Gonzales testified that the man who did not have the shirt on had brass knuckles and had started the fight with her husband in the parking lot.

After both men came to Gonzales' apartment the day after the fight and one made the threatening remark, she went to the police station to report the incident. Gonzales testified that she spoke to Detective John Wayne Davis who showed her three photo arrays, one with a female and two with males, so that she could identify Angelica Fuentes, Defendant, and his brother. With regard to the male arrays, Detective Davis told Gonzales that the male she had observed with his shirt on—Victor—would be referred to as "Male 1" and the one with his shirt off—Defendant—would be "Male 2." Although Gonzales incorrectly identified Victor as Defendant in the first array, she then correctly identified Victor as Male 1 in the first photo array, and Defendant as Male 2 in the second array. Gonzales explained that she had made a mistake when she saw the first array and that she could

in fact distinguish the brothers because Male 2's "eye was kind of droopy," and he had a little scar on his forehead.

At trial, Gonzales was initially unable to state whether Defendant was Male 1 or Male 2. However, on redirect, she again stated that Male 2 was the person without the shirt and who had the brass knuckles. She also testified that when Male 2 and her husband were arguing, she stared right at him and knows what he looks like. On recross-examination, defense counsel asked Defendant to stand. When asked if she could identify him at that point, Gonzales testified that Defendant was Male 2. She explained that she could not see his face earlier because he had been sitting and was looking down. Once he was looking right at her, she was able to identify him.

We conclude that Gonzales' testimony that Male 2 was the person who was shirtless during the fight and used brass knuckles, her identification from the photo array that Male 2 was Defendant, and her in-court identification of Defendant provided sufficient evidence for the jury to conclude that it was Defendant who made the retaliatory threats to her. *See Salgado*, 1999-NMSC-008, ¶ 25 (stating that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). We affirm Defendant's conviction for retaliation against a witness.

**Aggravated Battery**

11

Defendant also asks that we reverse his aggravated battery conviction. Defendant concedes that the jury was properly instructed on aggravated battery. He further concedes that the jury was properly instructed on the elements of self-defense and defense of another and that the jury was told that the burden is on the State to prove beyond a reasonable doubt that he did not act in self-defense, or in defense of his twin brother, or Angelica Fuentes. Defendant argues that the State did not present evidence to show proof beyond a reasonable doubt that he did not act in self-defense. We note that Defendant provides virtually no support for this assertion except to state that he was "simply defending himself from a man who had approached him and instigated a fist[]fight by punching him in the head and that testimony from him, Victor, Anna, and [Fuentes] support[s] such a finding."

Gonzales testified that after Fuentes rammed her car into Luis Gonzales' vehicle, Luis Gonzales went over to Fuentes' car and asked, "What the hell?" She testified that Defendant then came around and punched Luis Gonzales in the face while wearing brass knuckles. Luis Gonzales testified in a similar manner. He told the jury that after Fuentes rammed his car, he got out of his vehicle and went over to her. As he was talking to Fuentes, Luis Gonzales felt blows to the side of his head and only then started fighting back. Although Defendant presented contrary evidence through his witnesses, we have long held that "[c]ontrary evidence supporting

12

acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We conclude that there was sufficient evidence supporting the State's theory that Defendant was not acting in self-defense when he committed aggravated battery upon Luis Gonzales.

**Defendant's Convictions for Child Abuse Violate Double Jeopardy**

Defendant contends that his two convictions for child abuse should be reduced to a single count. Defendant relies on this Court's reasoning in *Castañeda*, where we held that a driver who endangered three child passengers by driving drunk was only subject to a single conviction for child abuse because "the abuse of the three children occurred during a single criminally negligent act and therefore constituted only one violation of the statute." 2001-NMCA-052, ¶ 18. In *Castañeda*, we examined the facts of that case in light of the "indicia of distinctness" set forth in *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). *Castañeda*, 2001-NMCA-052, ¶ 13 (internal quotation marks and citation omitted).

In analyzing a "unit of prosecution" case where an accused is charged with multiple violations of a single statute, we must determine "whether the [L]egislature intended to permit multiple charges and punishments under the circumstances of the particular case." *Id*. Section 30-6-1 does not clearly define the unit of prosecution so

we must therefore determine whether Defendant's offenses are "separated by sufficient indicia of distinctness." *See Castañeda*, 2001-NMCA-052, ¶ 13 (internal quotation marks and citation omitted). Such indicia of distinctness are present when "two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)." *Swafford*, 112 N.M. at 13-14, 810 P.2d at 1233-34. Thus, we look to the "(1) temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) [the] defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *Castañeda*, 2001-NMCA-052, ¶ 13 (internal quotation marks and citation omitted).

In this case, child abuse by endangerment occurred when Defendant crawled out of the bedroom closet, pointed the gun at Gonzales, and threatened to kill her and her children if she said anything. Both children were in the bedroom hiding under the crib when Defendant made his threat. As in *Castañeda*, child abuse in this case occurred during a single criminal act, and we therefore conclude that it constituted only one violation of the statute.

The State concedes that if Defendant's convictions were based on negligent child abuse by endangerment, the holding in *Castañeda* would require merger in this case. However, the State argues that *Castañeda* is inapplicable, and double jeopardy

does not apply because Defendant's convictions here are for intentional abuse by endangerment. The State relies on *State v. Schoonmaker*, 2005-NMCA-012, 136 N.M. 749, 105 P.3d 302, *rev'd on other grounds*, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105, for its argument. As the State points out, *Schoonmaker* established that the offenses for intentional and negligent child abuse are separate and distinct offenses. *Id.* ¶ 27. However, we do not find the holding in that case analogous to the situation in this matter.

In *Schoonmaker*, the defendant was indicted for intentional child abuse resulting in great bodily harm, or in the alternative, negligent child abuse resulting in great bodily harm. *Id.* ¶ 2. At the first trial, the jury acquitted the defendant of intentional child abuse, but hung on whether he committed negligent abuse. *Id.* The defendant was subsequently retried and convicted on one count of negligent child abuse. *Id.* On appeal, the defendant argued that his acquittal of intentional child abuse and subsequent prosecution for negligent child abuse violated double jeopardy. *Id.* ¶ 18. Specifically, he argued that the two charges were the same crime, or that intentional abuse is a lesser included offense of negligent abuse. *Id.* We concluded that there was no double jeopardy violation because the two statutes are mutually exclusive, and we held that the crime of intentional child abuse is not the same crime or lesser included crime of negligent child abuse. *Id.* ¶ 27. In this case, there is no

15

dispute that Defendant committed two acts violative of the same statutory offense and not two different statutory offenses as was the case in *Schoonmaker*. Consequently, as we explained above, there is not sufficient indicia of distinctness to warrant the imposition of separate, consecutive punishments for each offense. We remand with instructions to the district court to vacate one of Defendant's child abuse convictions.

**Jury Instruction on Retaliation Against a Witness**

Defendant argues that the district court failed to properly instruct the jury on the essential elements of retaliation against a witness and, as a result, we should vacate his conviction and remand for a new trial.

"The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). In this case, Defendant concedes that he failed to object to the tendered jury instruction at trial, and therefore, we review for fundamental error only.

The district court instructed the jury that to find Defendant guilty of retaliation against a witness, the State had to prove that:

16

1. [D]efendant knowingly threatened . . . Gonzales;
2. [D]efendant engaged in the conduct with the intent to retaliate against . . . Gonzales for providing any information to a law enforcement officer relating to the commission or possible commission of aggravated assault;
3. This happened in New Mexico on or about the 7th day of March, 2007.

The standard instruction set forth in UJI 14-2404 NMRA includes language that "the defendant knowingly threatened: [bodily injury to (*name of person*)] [or] [damage the tangible property of (*name of person*)]." Defendant contends that by omitting the language from the standard instruction, the jury was unable to properly assess whether he committed the crime of retaliation against a witness. Specifically, Defendant argues that because the jury was not required to determine whether he threatened Gonzales with bodily harm or damage to her tangible property, it did not find an essential element of the crime.

As our Supreme Court has noted,

The doctrine of fundamental error should be applied sparingly, to prevent a miscarriage of justice, and not to excuse the failure to make proper objections in the court below. With regard to a criminal conviction, the doctrine is resorted to only if the defendant's innocence appears indisputable or if the question of his [or her] guilt is so doubtful that it would shock the conscience to permit the conviction to stand.

*State v. Reyes*, 2002-NMSC-024, ¶ 42, 132 N.M. 576, 52 P.3d 948 (alteration in original) (internal quotation marks and citation omitted). Defendant has not shown how the instruction that was given would put his conviction into doubt so as to result

in a miscarriage of justice. Even though the tendered instruction omitted some of the standard language contained in UJI 14-2404, the testimony that formed the basis of the conviction was that Defendant returned to Gonzales' apartment and threatened to murder her in retaliation for providing information about the altercation the previous day. There was no argument by counsel or evidence from any witness that the threats involved anything less than physical harm or "bodily injury" to Gonzales and her family. Defendant failed to establish fundamental error.

**Expert Witness Rebuttal Testimony**

Defendant's last argument is that the district court improperly allowed the admission of Dr. Zelicoff's testimony over defense counsel's objection. Admission or exclusion of expert testimony in New Mexico is governed by Rule 11-702 NMRA, which states:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

In *State v. Alberico*, 116 N.M. 156, 166, 861 P.2d 192, 202 (1993), the New Mexico Supreme Court explained that Rule 11-702 establishes three prerequisites for admission of expert testimony: "(1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the area of

18

scientific, technical, or other specialized knowledge in which they are qualified." *State v. Torres*, 1999-NMSC-010, ¶ 23, 127 N.M. 20, 976 P.2d 20.

In his case in chief, Defendant called Kathy Fuller as an expert in polygraphy. On cross-examination, Fuller testified about the concept of "base rates," and on redirect she opined that the base rate cannot affect the accuracy of polygraph examinations. In response to Fuller's testimony, the State called Dr. Alan Zelicoff as a rebuttal witness on the issue of "base rates." Defense counsel timely objected to the admission of Dr. Zelicoff's testimony, arguing that he was not a proper rebuttal expert witness under Rule 11-707 NMRA. Specifically, defense counsel argued that Dr. Zelicoff is a scientist with a degree in physics, a medical doctor and statistician, and that he is not certified in polygraphy. Therefore, defense counsel argued, Dr. Zelicoff could not be qualified as an expert in polygraphs. The district court disagreed and ruled that the State was entitled to rebut Defendant's polygraph evidence and stated that it would allow Dr. Zelicoff's testimony if Dr. Zelicoff was properly qualified to testify about the accuracy rates of polygraph examinations. We now turn to Defendant's argument that the district court abused its discretion in allowing expert witness opinion rebuttal evidence from a person who is not a trained polygrapher.

Rule 11-707 governs the admissibility of polygraph examination results. Furthermore, our Supreme Court has held that polygraph examination results are

19

sufficiently reliable to be admitted under Rule 11-702, provided the expert is qualified and the examination is conducted in accordance with the rule. *Lee v. Martinez*, 2004-NMSC-027, ¶¶ 4, 39, 136 N.M. 166, 96 P.3d 291. Rule 11-707(B) imposes certain restrictions on who can testify as an expert witness regarding polygraph examination and results. Once a polygraph examiner's testimony has been allowed, however, "[t]he remedy for the opponent of polygraph evidence is not exclusion; the remedy is cross-examination, presentation of rebuttal evidence, and argumentation." *Lee*, 2004-NMSC-027, ¶ 48.

In this case, Dr. Zelicoff's testimony was not being offered as the administrator of the polygraph examination nor was he commenting on, or interpreting, Defendant's polygraph examination. *See* Rule 11-707(A)(3) (defining polygraph examiner). Rather, Dr. Zelicoff's testimony was limited to "commenting on statistics and different populations and their accuracy within those populations." The record in this case establishes that Dr. Zelicoff did not discuss the results of Defendant's polygraph, and his testimony had the limited purpose of rebutting Fuller's opinion that polygraph examinations have a 90% accuracy rate, that the base rate would not negatively affect that accuracy rate, and that countermeasures could be effectively contained. Given Dr. Zelicoff's qualifications as a medical doctor, scientist, and statistician, we cannot say that the district court abused its discretion in allowing his testimony.

20

**CONCLUSION**

For the foregoing reasons, we remand to the district court with instructions to vacate one of Defendant's child abuse convictions. We affirm on the remaining issues.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**