796 P.2d 606

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Anthony TRANGUCCI,
Defendant–Appellant.**

**No. 10925.**

Court of Appeals of New Mexico.

Jan. 30, 1990.

Certiorari Denied March 19, 1990.

Hal Stratton, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Peter Rames, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant, Anthony Trangucci, appeals his convictions for aggravated battery (with firearm enhancement), aggravated assault with a deadly weapon (with firearm enhancement), and tampering with evidence.

On appeal, defendant contends that: 1) denial of his motion to suppress was error; 2) denial of his request to call an additional witness after defense counsel rested was error; and 3) he was denied effective assistance of counsel at trial by his counsel's refusal to call the additional witness. We determine that the district court correctly interpreted the public safety exception to the *Miranda* warnings and that the court's application of this exception was supported by substantial evidence. We therefore hold that denial of defendant's motion to suppress was not error. The transcript does not reveal a request to call an additional witness at the end of the defendant's case-in-chief. We therefore find no error based upon defendant's second claim. We also reject defendant's final claim because he failed to allege any of the factors necessary to a showing of ineffective assistance of counsel.

FACTS

The charges arise from an incident which occurred on the evening of November 22, 1987, when, at approximately 9:00 p.m., defendant forced entry into the apartment of James Abell. After Abell refused to comply with defendant's demands for money, defendant pulled a gun and shot a wall. When defendant's repeated demands for money were unsuccessful, he shot Abell in the face and ran from the scene.

Early the next morning, the police learned defendant was at a particular motel and went there to arrest him. The officers surrounded defendant's room, announced their presence, and gained access to the room with a motel passkey.

The officers entered the room with their sidearms drawn. They observed a man lying on one of the beds with his back towards the door; they did not immediately spot defendant. Shortly, the officers spotted defendant hiding underneath a dresser table with his hands hidden underneath his chest. Defendant was ordered to bring his hands into view and come out from underneath the dresser. Defendant brought his hands into view and then said he was stuck underneath the dresser. The officers lifted the dresser and then pulled or lifted defen-

dant out from underneath it. As the officers were lifting defendant to his feet, Officer Overman conducted a quick pat down search of defendant's front area and asked, "Where is the gun?" Defendant was not yet handcuffed. Defendant immediately replied that the officer was not going to find the gun because he had ditched it. Defendant was then given his *Miranda* warnings before further questioning.

DISCUSSION

Whether the trial court committed error in refusing to suppress defendant's statement regarding the gun.

■ Officer Overman's question and defendant's response were the subject of a motion to suppress which the trial court denied on the basis of the public safety exception to the warnings required pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The public safety exception was established in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

Defendant argues that the public safety exception, as explained in *Quarles,* was based upon the existence of three factual elements: immediate pursuit by police officers, arrest in a public place, and the possibility that the public or an accomplice might find and use a gun. We disagree and do not read *Quarles* so narrowly. *See United States v. Padilla,* 819 F.2d 952 (10th Cir.1987); *United States v. Brady,* 819 F.2d 884 (9th Cir.), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988); *United States v. Eaton,* 676 F.Supp. 362 (D.Me., 1988).

In *Quarles,* the court reasoned that although defendant was in police custody when he made his statements and the facts came within the ambit of custodial interrogation governed by *Miranda,* there was, nevertheless, a "public safety" exception to the requirement that *Miranda* warnings be given before a suspect's answers are admissible. Furthermore, whatever the motivation of individual officers in such a situation, the Court did not believe the doctrinal underpinnings of *Miranda* required that it be applied in all its rigor to a situation in which police officers ask questions reason-

ably prompted by a concern for public safety.

The standard for application of the public safety exception to *Miranda* warnings is therefore a reasonable determination of an objective, immediate threat to the safety of the public. There is no indication that the Supreme Court intended this exception to be limited to cases in which there is immediate pursuit, arrest in a public place, and possibility that an accomplice or member of the public might find the gun, as defendant argues. Although the first and last of these factors may aid in determining the reasonableness of the perceived threat to public safety, they are not exclusive.

We note defendant's argument that the public safety exception applies only when the safety of the general public is at risk. Defendant argues that footnote 8 to the *Quarles* opinion supports the proposition that an objective, immediate threat to the safety of the police alone is not sufficient to invoke the *Quarles* public safety exception. We disagree. In footnote 8, the Court distinguished its holding from that in *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). In *Orozco,* the police entered the sleeping quarters of the defendant and questioned him concerning, among other things, whether he owned a gun. The court in that case held that all statements about the gun should be suppressed. The *Quarles* Court distinguished that case because the police questioning was clearly investigatory and "did not * * * relate to an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *Id.* 467 U.S. at 659, fn. 8, 104 S.Ct. at 2633, fn. 8. Thus, the distinction in footnote 8 centers upon the reason for the questioning, not the fact that the interrogation was done in the defendant's sleeping quarters, where the only safety risk was to the police.

One of the pivotal paragraphs of the *Quarles* opinion reads: "We think police officers can and will distinguish almost instinctively between questions necessary to secure *their own safety or the safety of the public* * * *." *Id.* at 658–59, 104 S.Ct.

at 2633 (emphasis added). The Supreme Court has clearly included considerations of police safety within the purview of the public safety exception.

On appeal, a trial court's denial of a motion to suppress will not be disturbed if supported by substantial evidence, unless it also appears that the determination of the court was erroneously premised. *State v. Boeglin,* 100 N.M. 127, 666 P.2d 1274 (Ct. App.1983). Here, the trial judge found that the situation had not stabilized or been secured for everybody's safety. Based on this finding, he concluded that the public safety exception to the *Miranda* warnings applied and admitted the evidence of defendant's statement regarding the gun. This decision was supported by substantial evidence. We therefore affirm the trial court's denial of the motion to suppress.

**Whether the denial of defendant's request to call another witness after defense counsel rested was error.**

Defendant argues that the trial court erroneously denied his request to call Gilbert Padilla as a witness after defense counsel rested. Appellate defense counsel relies on the docketing statement for the factual assertion that defendant renewed his request to call Gilbert Padilla at the end of the defense's case and this request was denied. The only reference in the transcript to use of Mr. Padilla as a witness was during the earlier suppression motion hearing. At that hearing, defendant asked for an opportunity to review a taped confession by Padilla because he might want to call Padilla as an alibi witness. The court arranged an opportunity for defendant to listen to the tape. The transcript does not reveal any further requests to call additional witnesses. Neither a request, nor any denial of a request, to call Padilla at the conclusion of the defense's case-in-chief appears in the trial transcript.

■ When the record and transcript of the trial proceeding demonstrate that "facts" recited in the docketing statement were not the facts of the case presented to the trial court, we will not utilize those non-facts in our review of the trial court's ruling. We advise counsel that when a trial transcript has been authorized, factual recitations in the docketing statement must give way to what the transcript reveals. *State v. Calanche,* 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978). It is the duty of the party on appeal to make certain that a proper record has been made of the trial court proceedings. *State v. Coates,* 103 N.M. 353, 707 P.2d 1163 (1985). This court will not consider whether the trial court improperly denied defendant's request if it is not on the record. *Id.; State v. Gilbert,* 100 N.M. 392, 671 P.2d 640 (1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984).

**Whether defendant was denied effective assistance of counsel.**

■ Defendant finally argues that he was denied effective assistance of counsel because of trial counsel's refusal to call Padilla as an additional witness. Defendant asked the trial court for permission to dismiss his trial counsel during a pretrial motion and again during trial. Each of these requests was followed by a motion by defense counsel to withdraw from representation. The district court found that trial counsel had been making appropriate motions and was doing an excellent job representing defendant.

The test for determining whether an accused has been afforded effective assistance of counsel is whether defense counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney. *State v. Dean,* 105 N.M. 5, 727 P.2d 944 (Ct.App.1986). Defendant bears the burden of showing both the incompetence of his attorney and proof of prejudice. *Id.* This court will not attempt to second-guess the tactics and strategy of trial counsel on appeal. *Id.*

Appellate defense counsel does not allege any fact to support a claim for ineffective assistance of counsel. We therefore deny defendant's claim that he was denied effective assistance of counsel.

Affirmed.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.