# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-003

Filing Date: September 15, 2020

No. A-1-CA-34272

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RONALD WIDMER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Certiorari Denied, November 3, 2020, No. S-1-SC-38500. Released for Publication March 9, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Chief Judge.**

**{1}** This case is before us on remand from our New Mexico Supreme Court to address the arguments raised by Defendant Ronald Widmer that were not addressed in our original opinion filed on March 5, 2018, and in particular, Defendant's argument concerning the lawfulness of his arrest. *State v. Widmer* (*Widmer I*), 2018-NMCA-035, ¶ 1, 419 P.3d 714, *rev'd*, *State v. Widmer* (*Widmer II*), 2020-NMSC-007, ¶¶ 8, 42-44, 461

P.3d 881. The jury convicted Defendant of one count of possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2019). Given our Supreme Court's decision that Defendant's pre-*Mirandized* statements were admissible because the *Quarles* public safety exception applied to permit the officer's question to him, we address Defendant's remaining arguments on appeal: whether (1) the district court erred in not suppressing evidence and statements resulting from an unlawful arrest; (2) the district court erred in admitting lapel camera evidence under Rule 11-106 NMRA; and (3) the district court erred in not granting a continuance. *See Widmer II*, 2020-NMSC-007, ¶ 1; *New York v. Quarles*, 467 U.S. 649, 655-56 (1984). We affirm.

## BACKGROUND

**{2}**     Defendant's drug possession charge arose from an incident in which Albuquerque Police Department (APD) officers investigated whether a scooter in Defendant's possession was stolen. *Widmer I*, 2018-NMCA-035, ¶ 2. Officers ran Defendant's personal identification information and the scooter's vehicle identification number (VIN) through the National Crime Information Center (NCIC) to check for outstanding warrants and any stolen vehicle reports and discovered that there were two outstanding felony warrants for Defendant's arrest. *Widmer II*, 2020-NMSC-007, ¶¶ 2, 15. "Officers placed Defendant in handcuffs while they awaited confirmation that the warrants were valid." *Id.* ¶ 2. "As part of the arrest procedures . . . officers put on protective gloves, and Officer Apodaca asked Defendant, 'Is there anything on your person that I should know about?' " *Id.* ¶ 16. "Defendant responded, 'I have meth[,]' [and o]fficers collected a white powder from inside a pill container hanging from Defendant's belt loop." *Id.* ¶ 3; *Widmer I*, 2018-NMCA-035, ¶ 7. After the physical evidence was placed in a plastic evidence bag, Defendant muttered, "I'm gonna have another charge now." *Widmer II*, 2020-NMSC-007, ¶ 3. "Shortly thereafter, APD dispatch confirmed that the arrest warrant[s] for Defendant [were] outstanding," *Widmer I*, 2018-NMCA-035, ¶ 7, and "[t]he white powder recovered from Defendant's belt loop tested positive for methamphetamine." *Widmer II*, 2020-NMSC-007, ¶ 3. As a result, Defendant was charged with felony possession of a controlled substance. At trial, Defendant moved to suppress the evidence and statements resulting from the search incident to the arrest, but the district court denied the motion, and Defendant was ultimately convicted for felony possession of methamphetamine. Defendant appeals.

## DISCUSSION

I.     **The District Court Did Not Err in Denying Defendant's Motion to Suppress Evidence and Statements Because Defendant's Arrest Was Lawful, and a Contemporaneous Search Incident to Arrest Was Permitted**

**{3}**     Defendant's challenge to the district court's denial of the motion to suppress focuses on the legality of the arrest itself. Defendant argues that his arrest was unlawful because local police department policy prohibits making an arrest based on dispatch's preliminary report regarding the existence of an outstanding warrant until such warrant

is confirmed. Because Defendant was arrested *before* the reported warrants were confirmed minutes later, he contends that the arrest was unlawful, and thus, the district court should have suppressed the evidence (the red pill container from his belt loop) as well as Defendant's statements resulting from the search incident to the allegedly "unlawful" arrest. We disagree.

**{4}**     "Appellate review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "The [district] court's denial of a motion to suppress will not be disturbed on appeal if it is supported by substantial evidence, unless it appears that the determination was incorrectly premised." *State v. Jacobs*, 2000-NMSC-026, ¶ 34, 129 N.M. 448, 10 P.3d 127; *accord State v. Trangucci*, 1990-NMCA-009, ¶ 13, 110 N.M. 385, 796 P.2d 606. We review the application of law to the facts de novo but view the facts in the light most favorable to the State, as the prevailing party. *State v. Jones*, 2002-NMCA-019, ¶ 9, 131 N.M. 586, 40 P.3d 1030.

**{5}**     In support of his argument that his arrest was illegal, Defendant cites primarily to Officer Frank Baca's testimony on local police department policy, which suggests that officers may not make an arrest based on a preliminary warrant report until the warrant is secondarily confirmed. However, our appellate courts have never held that arrest upon a NCIC-reported felony arrest warrant may only follow some secondary confirmation that the warrant is accurate or remains active. *See Widmer I*, 2018-NMCA-035, ¶ 43 (Hanisee, J., dissenting) ("While ensuring the accuracy of known arrest warrants is laudable, it is not a constitutional mandate."). We decline to embrace such a standard today. That is because a police officer's non-adherence to a given police department policy does not in and of itself suffice to establish a constitutional violation. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("[W]hile [s]tates are free to regulate . . . arrests however they desire, state restrictions [on arrests] do not alter the Fourth Amendment's protections."); *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005) ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment[.]"); *United States v. Wilson*, 699 F.3d 235, 243 (2d Cir. 2012) ("[T]he Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and . . . the violation of such restrictions will not generally affect the constitutionality of a seizure supported by probable cause."). Conversely, an officer's adherence to a constitutionally flawed police department policy does not suffice to excuse a constitutional violation. *See United States v. Brown*, 934 F.3d 1278, 1296 (11th Cir. 2019) (reasoning that while a jury may consider police department policy as relevant evidence, it may not substitute the policy for the constitutional standard); *cf. City of Oklahoma City v. Tuttle*, 471 U.S. 808, 812 (1985) (explaining that a city may be held liable when the official policy of the city causes an officer to deprive a person of his or her constitutional rights in the execution of such policy). As well, a law enforcement officer's understanding of the law—something a police department policy is not, in any event—is not dispositive in determining the constitutionality of a search or seizure. *See State v. Martinez*, 1997-NMCA-048, ¶ 15, 123 N.M. 405, 940 P.2d 1200 ("The state of mind of the law enforcement officer is not dispositive in determining the constitutionality of a search or

seizure. Ordinarily, the propriety of an officer's action is based on the information known to the officer, not on the officer's motive or understanding of the law.").

**{6}** We conclude that Defendant was legally arrested when a NCIC database search revealed the existence of two outstanding felony arrest warrants for Defendant, regardless of police department policy regarding secondary confirmation of the accuracy of the arrest warrant or warrants. That the policy-required secondary confirmation of Defendant's warrants was ongoing when Defendant was handcuffed and searched during officers' on-scene investigation does not invalidate the legality of the arrest and constitutionality of the contemporaneous search thereto. Also, Defendant here does not challenge the lawfulness of the initial stop, the NCIC database search, nor the validity of his arrest warrants.

**{7}** Our holding in this regard is consistent also with the premise upon which past supportive New Mexico case law rests, which upheld the validity of arrests made pursuant to outstanding warrants, even without physical possession of the underlying warrant, when the validity of the warrant is unchallenged. *See State v. Grijalva*, 1973-NMCA-061, ¶¶ 5, 10-13, 85 N.M. 127, 509 P.2d 894 (holding that arrest and seizure were lawful where dispatch indicated the defendant had an outstanding warrant and that in the absence of a challenge to the validity of an arrest warrant, physical possession of the warrant is not required for a lawful arrest). We similarly hold that Defendant's arrest, pursuant to valid and unchallenged arrest warrants, irrespective of any secondary confirmation per local police department policy, was lawful.

**{8}** In his reply brief, Defendant cites to *State v. Yazzie* for the proposition that preliminarily indication by dispatch of a possible warrant could *not* give rise to probable cause for an arrest. 2016-NMSC-026, ¶¶ 2, 40, 376 P.3d 858. However, *Yazzie* is inapposite to the case at bar. There, our Supreme Court held that an "unknown" status designation from a database determining whether drivers were compliant with insurance requirements may form the reasonable suspicion for an investigatory stop. *Id.* ¶ 40. Also, the evidence in *Yazzie* demonstrated that "close to ninety percent of vehicles reflecting an 'unknown' compliance status" were in fact uninsured in violation of law. *Id.* ¶ 2. Conversely, here, we review whether officers involved in an already valid stop, investigating whether a scooter was stolen, may rely on outstanding felony warrants—without completed secondary confirmation—to lawfully arrest a defendant. We reiterate that we have never held that secondary confirmation of a warrant is required for an arrest to be lawful, and we cannot consider *Yazzie*, discussing the propriety of an insurance database search as providing reasonable suspicion for an initial stop, to be dispositive on outstanding felony arrest warrants under the facts of this case. Defendant cites no other controlling authority and thus, we assume none exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel."); *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{9}** Moreover, given the lawfulness of the arrest, we also conclude that the district court properly denied the motion to suppress Defendant's statements and the evidence seized from the search incident to that *lawful* arrest. We briefly explain. Searches incident to arrests are the well-established exception to the generally applicable warrant requirement. *See State v. Paananen*, 2015-NMSC-031, ¶ 29, 357 P.3d 958 ("One of the most firmly established exceptions to the warrant requirement is the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested." (internal quotation marks and citation omitted)). Our jurisprudence permits a contemporaneous search incident to an arrest when an outstanding warrant forms the basis of the arrest. *See State v. Weidner*, 2007-NMCA-063, ¶ 18, 141 N.M. 582, 158 P.3d 1025 (stating that the search incident to an arrest exception requires the state to prove that "the search occurs as a contemporaneous incident to the lawful arrest of the defendant and is confined to the area within the defendant's immediate control" (internal quotation marks and citation omitted)). Defendant's outstanding arrest warrants resulted in his arrest, and the methamphetamine seized from Defendant's belt loop in the search incident to the arrest, which lead to the controlled substance possession charge at issue, were not necessary to justify that arrest. *See id.* ¶ 19 ("This Court has stated that even if a search occurs before the formal arrest, the search is lawful as long as the fruits of the search were not necessary to justify the arrest and the formal arrest followed quickly on the heels of the challenged search." (internal quotation marks and citation omitted)). In addition, although not dispositive, the outstanding warrants were confirmed within minutes of Officer Apodaca arresting Defendant and searching him incident to the arrest. For these reasons, we conclude that the district court properly denied the motion to suppress the evidence and statements resulting from a search incident to a *lawful* arrest.

## II.      The District Court Did Not Abuse Its Discretion in Admitting the Lapel Video Evidence of Defendant's Incriminating Statements Under the Rule of Completeness

**{10}** Defendant argues that the district court erred by allowing the jury to receive evidence of his incriminating statements under the rule of completeness. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Candelaria*, 2019-NMCA-032, ¶ 41, 446 P.3d 1205 (internal quotation marks and citation omitted), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37644, May 9, 2019). "An abuse of discretion occurs when a ruling is against logic and is clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). Given the presumption of correctness in the district court's ruling, the party claiming error bears the burden of showing such error. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211.

**{11}** At trial, Defendant sought to introduce a portion of Officer Apodaca's lapel video evidence to impeach Officer Apodaca on his statements regarding the evidence collected at the scene, alleging that the sample tested was not retrieved from Defendant

and instead belonged to the female suspect, Linda Alvarez.[1] Defendant was unable to properly admit the relevant portion of the video however, because it was not prepared in a form that the jury could review without extraneous content also being admitted. As a consequence, Defendant agreed to lay a foundation for the entire video, including the accompanying audio, from Officer Apodaca's lapel camera and moved to admit it into evidence, waiving any objection to the statements contained therein. The State then argued that a piecemeal presentation of evidence, highlighting certain portions of video with audio, would confuse the witnesses and the jury and that for the sake of completeness Officer Baca's lapel camera evidence presented during the State's case in chief should also be admitted with audio, having previously been admitted without audio. After prolonged discussions, the court ruled that Defendant's request to admit Officer Apodaca's lapel video evidence *with* audio constituted a waiver of his earlier objection regarding the audio on Officer Baca's lapel video evidence and permitted both officers' lapel camera evidence with audio to be admitted for the jury to review.

**{12}** Under the rule of completeness, "a party may move for the admission of any writing or recorded statement that should, in fairness, be considered contemporaneously with a writing or recorded statement introduced by another party." *State v. Baca*, 1995-NMSC-045, ¶ 24, 120 N.M. 383, 902 P.2d 65; *see* Rule 11-106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). The rule permits parties "to introduce recorded statements to place in context other evidence that, when viewed alone, may be misleading." *Baca*, 1995-NMSC-045, ¶ 24. Based on our review of the record—specifically, the bench discussion regarding the admission of both officers' lapel camera footage—the district court ruled that highlighting certain segments of video which *included audio* from Officer Apodaca's lapel camera during the defense's presentation would likely confuse the jury when considered alongside Officer Baca's video-only recording, previously admitted during the State's case in chief. Thus, the district court ruled that the jury should be permitted to fully review both videos, avoiding any misleading or deceptive impressions of the evidence.

**{13}** Defendant argues that admission of Officer Baca's lapel camera video evidence *with* audio was an abuse of discretion because it was unrelated to the purpose for which he had offered Officer Apodaca's lapel camera evidence—to show the jury which bag was collected from Alvarez. Defendant cites *State v. Barr* for its proposition that the introduction of additional video evidence was improper under the rule of completeness because "defense counsel had not created a misleading or deceptive impression of the videotaped statement and because the [s]tate had not shown that the entire video was both relevant and explained or qualified the portions initially referenced by defense

[1]During the State's case in chief, Officer Apodaca clarified that a plastic baggie containing methamphetamine was also seized from Alvarez, but that the white powder loose in Defendant's red pill container was separately sealed into "the larger [of the two] bag[s]." The samples were then tagged into the same evidence bag because both samples field-tested as methamphetamine. The forensics expert who analyzed the evidence in the larger baggie also testified and confirmed that the sample was methamphetamine. The district court in reviewing Officer Apodaca's lapel camera evidence noted that the footage was unclear on the question of which baggie (and its contents) belonged to whom.

counsel[.]" 2009-NMSC-024, ¶ 32, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110. We disagree.

**{14}** Our review of the videos is consistent with the district court's conclusion that Officer Apodaca's lapel camera evidence was inconclusive on the question of which baggie belonged to whom. Unlike *Barr*, here, there was legitimate concern that a barrage of unconnected video segments would confuse the jury, and thus, admission of the videos under the rule of completeness was proper. Moreover, Defendant waived his earlier objections to out-of-court statements by admitting Officer Apodaca's redacted lapel camera footage, which also included audio containing statements of Defendant. Considered in sum, we cannot conclude that the district court abused its discretion by admitting Officer Baca's lapel camera video with audio, alongside Officer Apodaca's, despite the former's inclusion of certain incriminating statements by Defendant, on grounds that the admission of both better enabled the jury to evaluate the collective footage and avoid any misleading impressions therefrom.

### III.    The District Court Did Not Err in Refusing to Grant a Continuance

**{15}** Defendant next contends that the district court erred in its denial of a continuance, finding that defense counsel was responsible for his unpreparedness but refusing to also find counsel "ineffective" given his unpreparedness. "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. There will be no grounds for reversal unless the defendant demonstrates abuse of discretion that resulted in prejudice to the defendant. *See State v. Sanchez*, 1995-NMSC-053, ¶ 17, 120 N.M. 247, 901 P.2d 178.

**{16}** We initially note that Defendant's arguments in this section are particularly difficult to follow as they were inadequately developed and conclusory. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments); *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Nevertheless, to the extent we understand Defendant's arguments, we briefly address them.

**{17}** Defendant contends that the late disclosure of the drug-analysis evidence and the officers' lapel video evidence undermined defense counsel's preparedness for trial. The State responded that the evidence at issue was available to Defendant when defense counsel received discovery in the case, but defense counsel neglected to retrieve the video from APD evidence. Here, contrary to the district court's pretrial scheduling order stating that all discovery and/or motions to suppress or other substantive motions should be filed thirty days before the first day of trial, Defendant's motion to continue and motion to suppress were filed only fifteen days before the first day of trial, and Defendant's motion to compel the production of video evidence filed only ten days before the first day of trial. *See State v. Candelaria*, 2008-NMCA-120, ¶ 14, 144 N.M. 797, 192 P.3d 792 (explaining that a trial court has the inherent authority

to control its docket and the proceedings before it); *see also Gonzales v. Atnip*, 1984-NMCA-128, ¶ 20, 102 N.M. 194, 692 P.2d 1343 ("Trial courts have inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (internal quotation marks and citation omitted)). We decline to consider a denial of a continuance based on counsel's unpreparedness for trial and failure to timely raise discovery issues as amounting to an abuse of discretion by the court. Instead, we consider these issues to fall squarely within the court's inherent authority to manage its docket and ensure orderly and expeditious disposition of cases. *See Candelaria*, 2008-NMCA-120, ¶ 14. In addition, Defendant's allegation that the district court's comment that defense counsel's request to be found ineffective was contemptuous, alongside its finding that defense counsel was unprepared, is self-contradictory, and therefore an abuse of discretion, is similarly tenuous, considering Defendant's failure to adhere to the pretrial scheduling order in the immediate days preceding trial. Accordingly, we conclude that the district court did not err in its denial of a continuance.

**CONCLUSION**

**{18}** For the foregoing reasons, we affirm Defendant's conviction.

**{19}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**