This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38028**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOEY L. HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** A jury convicted Defendant Joey L. Hernandez of aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963); tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); and aggravated battery without great bodily harm, contrary to NMSA 1978, Section 30-3-5(A), (B) (1969). Defendant appeals on the following grounds: (1) the district court erred in denying his proposed nondeadly force self-defense instruction, (2) the aggravated assault jury instruction amounted to fundamental error, and (3) the evidence was insufficient to support his convictions. We affirm.

**BACKGROUND**

**{2}** The following facts supporting the verdicts were established at trial. Defendant went to the Palmside Lounge in Alamogordo, where his girlfriend, Brianna Hicks, was drinking. Defendant appeared upset and followed Hicks into the women's restroom, where Defendant and Hicks could be heard arguing. Hunter Pearcey, the Palmside Lounge's manager, and Larry Richardson, a bouncer, went to the women's restroom in an effort to remove Defendant. In response, Defendant punched Richardson in the face, causing Richardson to fall backwards into a wall, where Defendant continued to hit him. Pearcey gained control of Defendant and took him to the floor, where Defendant began hitting Pearcey's legs. After Pearcey allowed Defendant to get up, Defendant brandished a knife, began waving it around in a threatening manner, and yelled, among other things, "I'll kill you." Pearcey responded by breaking a pool cue and using it as a prod to push Defendant toward the front door of the bar. A cellphone video taken by a patron showed Defendant backing up toward the door while holding a knife and being approached by two other people. Police arrived shortly thereafter and observed Defendant coming out of an alcove outside the bar. In that alcove, officers found a knife that was later identified as being the knife Defendant brandished inside the bar. The jury convicted Defendant of aggravated assault with a deadly weapon against Pearcey, tampering with evidence (the knife), and aggravated battery without great bodily harm against Richardson.

**DISCUSSION**

**I.     Defendant Does Not Persuade Us That the District Court Erred in Denying a Nondeadly Force Self-Defense Jury Instruction**

**{3}** Defendant contends he was entitled to a nondeadly force self-defense instruction on the charge of aggravated assault with a deadly weapon. Defendant's request for a self-defense jury instruction derived from Hicks's testimony that Defendant brandished the knife in response to Pearcey repeatedly striking him with a broken pool cue. Defendant tendered a nondeadly force self-defense instruction patterned on UJI 14-5181 NMRA, reasoning that his "threat of [using] deadly force is different than actually using deadly force." Defendant also tendered a deadly force self-defense instruction patterned on UJI 14-5183 NMRA as an alternative.

**{4}** Although the district court agreed with Defendant that he was entitled to a self-defense instruction, the judge rejected the nondeadly force instruction, stating, "when [Defendant] resorts to deadly force, I think it would have to be the deadly force [instruction given]." The jury, accordingly, was given a deadly force self-defense instruction, but not a nondeadly force self-defense instruction. Defendant argues on appeal that the district court erred in rejecting his requested nondeadly force self-defense instruction. We are not persuaded.

**{5}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Baxendale*, 2016-NMCA-048, ¶ 10, 370 P.3d 813.

"Failure to instruct on self-defense when there is a sufficient quantum of proof to warrant it is reversible error." *State v. Baroz*, 2017-NMSC-030, ¶ 13, 404 P.3d 769 (internal quotation marks and citation omitted). Our task on appeal is typically limited to determining whether sufficient evidence has been presented "to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170. A defendant, however, is not entitled to a nondeadly force self-defense instruction if he used deadly force when allegedly defending himself. *See State v. Lucero*, 2010-NMSC-011, ¶ 20, 147 N.M. 747, 228 P.3d 1167 (providing that a defendant is not entitled to an instruction patterned on UJI 14-5181 when the defendant uses deadly force); *cf. State v. Duarte*, 1996-NMCA-038, ¶ 4, 121 N.M. 553, 915 P.2d 309 ("It is well established that deadly force may not be used in a situation involving simple battery or in a struggle in which there has been no indication that death or great bodily harm could result.").

**{6}**     Defendant's argument that the district court erred in denying the nondeadly force self-defense instruction is predicated on his contention that he "did not use deadly force" when "he pulled a knife and began backing up toward the entrance of the bar, attempting to leave, [waving] the knife as a signal for others to stay away from him." From this, we understand Defendant to argue that the threat of using deadly force—in this instance the brandishing and waving of a knife—constitutes nondeadly force for purposes of self-defense.

**{7}**     Even assuming evidence was presented at trial supporting Defendant's version of events, Defendant's argument fails because it is undeveloped. As we have repeatedly emphasized, "[g]iven the presumption of correctness in the district court's ruling, the party claiming error bears the burden of showing such error." *State v. Widmer*, 2021-NMCA-003, ¶ 10, 482 P.3d 1254; *see also, e.g.*, *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261 ("[I]t is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred."). Defendant supports his argument in this case with only a cursory citation to *Baxendale* for the basic proposition that "deadly force is the force employed, whether or not it results in a lethal effect." 2016-NMCA-048, ¶ 13. But *Baxendale* does not come close to answering the relevant question—i.e., whether a person employs "deadly force" by brandishing a weapon and threatening to use deadly force. *See State v. Cardenas*, 2016-NMCA-042, ¶ 19, 380 P.3d 866 (defining "deadly force" as "a violent action known to create a substantial risk of causing death or serious bodily harm" (alteration, internal quotation marks, and citation omitted)). Defendant does not cite any authority—from New Mexico or elsewhere—that helps resolve this question. And the analogous New Mexico case law we found does not favor Defendant. *See State v. Lucero*, 1998-NMSC-044, ¶ 9, 126 N.M. 552, 972 P.2d 1143 (holding that it was not error to deny a self-defense instruction where the defendant instigated the conflict by brandishing a gun and firing it into the air because "[t]his show of potentially deadly force created a substantial risk of death or great bodily harm"); *Baxendale*, 2016-NMCA-048, ¶¶ 12-14 (providing that it was not error to deny a nondeadly force self-defense instruction on the ground that the defendant used "potentially deadly force").

**{8}** Though not acknowledged by Defendant, this precise issue arose recently in *State v. Vargas*, No. A-1-CA-34276, memo. op. (N.M. Ct. App. Feb. 8, 2018) (non-precedential). Like Defendant, the defendant in *Vargas* argued that "his threatening conduct involving the display of a knife, without more, constituted only the use of non-deadly force." *Id.* ¶ 11. Unlike here, however, the defendant in *Vargas* supported his argument with authority—namely, *State v. Clisham*, 614 A.2d 1297 (Me. 1992), and *People v. Pace*, 302 N.W.2d 216 (Mich. Ct. App. 1980). *Vargas*, No. A-1-CA-34276, memo. op. ¶¶ 11-12. *Vargas* ultimately did not decide whether the mere brandishing of a knife constitutes nondeadly force because the evidence in that case clearly established that the defendant used the knife "offensively and in a manner consistent with the use of deadly force." *Id.* ¶ 13. From *Clisham*, *Pace*, and the additional bit of research we have undertaken on our own, we understand that at least some jurisdictions hold that a defendant is entitled to a nondeadly force self-defense instruction if there is evidence the defendant, in self-defense, merely threatened the use of deadly force. *See, e.g.*, 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.4(a) (3d ed. 2020) ("But merely to threaten death or serious bodily harm, without any intention to carry out the threat, is not to use deadly force, so that one may be justified in pointing a gun at his attacker when he would not be justified in pulling the trigger." (footnote omitted) (collecting cases)). But without considered input from Defendant (and the State, upon notice of Defendant's developed argument), we are left without guidance in deciding whether to adopt such a position. Undertaking this task ourselves on an issue of first impression would create a substantial risk of error and cause a waste of judicial resources, resulting in a disservice to the parties and the public. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. We accordingly affirm the district court's denial of the nondeadly force self-defense instruction because Defendant has not satisfied his burden of showing error.

## II. Fundamental Error Did Not Result From the Aggravated Assault Jury Instruction

**{9}** Defendant seeks reversal of his aggravated assault conviction on the ground that the jury was not instructed it had to find the knife Defendant used was a deadly weapon. Because Defendant did not object to the jury instruction at trial, we review this issue for fundamental error. *State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448. This is a two-step process. We first determine whether the instruction was erroneous; if so, we next determine whether the error was fundamental. *Id.* ¶¶ 7-8.

**{10}** We have no problem concluding that the instruction was erroneous. The relevant instruction told the jury that, to convict Defendant of aggravated assault, it had to find, among other things, that "[D]efendant used a knife[.]" The State does not dispute that the knife Defendant used was not a per se deadly weapon, as defined by statute. *See* NMSA 1978, § 30-1-12(B) (1963) (providing that certain types of knives are, by definition, deadly weapons). Because of this, rather than being instructed that it merely needed to find Defendant used a knife, the jury instead should have been instructed that (1) it had to find Defendant used a deadly weapon and (2) the knife used by Defendant was a deadly weapon only if it found the knife "when used as a weapon, could cause

death or great bodily harm[.]" UJI 14-305 NMRA; *see also id.*, use note 5 (requiring this instruction where the object used is not specifically listed in the statutory definition of "deadly weapon").

**{11}** A conviction predicated on an erroneous jury instruction not objected to at trial, however, results in fundamental error only if "it would shock the court's conscience to allow [it] to stand either because of the obvious innocence of the defendant, or because a mistake in the process makes [the] conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Ocon*, 2021-NMCA-032, ¶ 8 (alteration, internal quotation marks, and citations omitted). Fundamental error does not arise if the missing element was not "disputed or in issue at trial" and "the jury, having considered the parties' legal and factual presentations and returned a guilty verdict on the given instructions, undoubtedly would have found the essential element if properly instructed." *Id.* ¶ 12 (internal quotation marks omitted).

**{12}** The State contends there was no fundamental error because "it is beyond dispute that the knife was a deadly weapon." Defendant, for his part, does not contend that it was disputed at trial whether the knife was capable of causing death or great bodily harm when used as a weapon, and our review of the record does not suggest that it was. Photographs of the knife entered into evidence showed that it was longer than a soda can and had a curved blade with a hook. Finally, and significantly, a police officer testified to his belief that the knife was a deadly weapon.[1] Under these circumstances, we conclude the jury undoubtedly would have found the knife was a deadly weapon had it been instructed correctly. *See id.* ¶¶ 15-16 (holding there was no fundamental error where the jury was not instructed on whether the defendant used a deadly weapon and where the evidence showed the defendant used "a sharp, six-inch-long knife"). We hold no fundamental error occurred in this case.

### III. Defendant's Convictions Are Supported by Sufficient Evidence

**{13}** We briefly address Defendant's argument that none of his convictions are supported by sufficient evidence. In reviewing for sufficiency, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "We do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285.

**{14}** As for Defendant's aggravated assault with a deadly weapon conviction, Defendant, relying on Hicks's testimony that Pearcey repeatedly struck Defendant with a pool cue before he brandished the knife, contends that "the State failed to disprove that [Defendant] acted in self-defense[.]" We reject Defendant's argument because, as

---

1Although Defendant objected to this testimony, the district court overruled that objection. Defendant does not argue on appeal that the district court erred in allowing the officer's opinion testimony or otherwise assert that we cannot consider it.

set forth above, Pearcey testified that Defendant drew a knife and threatened him before he used the pool cue. *See State v. Jackson*, 2018-NMCA-066, ¶ 25, 429 P.3d 674 ("It is for the jury to resolve conflicts in the evidence at trial, and we resolve conflicts in the light most favorable to the verdict."). Similarly, based on Hicks's testimony that she did not see Defendant punch Richardson, Defendant asserts there is insufficient evidence he committed battery. But, as Defendant himself acknowledges, Pearcey testified that Defendant punched Hernandez, and a photograph of Hernandez's injuries was admitted into evidence; this evidence suffices to sustain Defendant's battery conviction. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

**{15}**    Finally, relying on language in *State v. Silva*, 2008-NMSC-051, 144 N.M. 815, 192 P.3d 1192, that a tampering conviction must be supported with "*both* direct evidence of a defendant's specific intent to tamper *and* evidence of an overt act from which the jury may infer such intent," *id.* ¶ 18 (emphases added), Defendant contends that his tampering conviction is unsupported by sufficient evidence. But Defendant fails to acknowledge that his narrow reading of this language was eschewed by our Supreme Court in *State v. Guerra*, 2012-NMSC-027, 284 P.3d 1076. *Guerra* cautioned that, "[t]aken out of context, that single sentence could be misconstrued as requiring *both* direct and circumstantial evidence of intent to tamper, instead of *either*." *Id.* ¶ 14. A tampering conviction, the Court clarified, may be sustained with only circumstantial evidence of an intent to tamper. *See id.* Defendant does not argue that no such circumstantial evidence exists in this case and we think a rational juror reasonably could have inferred that Defendant dropped the knife in the alcove with the intent to prevent his apprehension, prosecution, or conviction of aggravated assault. *See State v. Schwartz*, 2014-NMCA-066, ¶ 36, 327 P.3d 1108 (stating that the jury could infer the defendant's intent to tamper from circumstantial evidence).

**CONCLUSION**

**{16}**    For the foregoing reasons, we affirm Defendant's convictions.

**{17}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**