This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42380**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JORDAN CHANCE SLADE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from the district court's judgment and sentence, convicting him of aggravated battery causing great bodily harm, aggravated burglary, criminal damage to property, and criminal damage to property of a household member. [1 RP 222-26, 232-40] Defendant challenges the sufficiency of the evidence to support each of his four convictions. [BIC 13-24]

**{3}** When assessing the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "We then determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076 (internal quotation marks and citation omitted).

**Aggravated Battery Causing Great Bodily Harm**

**{4}** Defendant challenges the sufficiency of the evidence to establish that he caused great bodily injury to Mr. Wimsatt. [BIC 13-17] Defendant contends that the injury to Mr. Wimsatt was not severe enough to warrant Defendant's conviction of a third-degree felony and that there was insufficient evidence that Defendant's actions were the reason for the alleged injury to Mr. Wimsatt's shoulder. [BIC 15-17] Defendant points out that Mr. Wimsatt did not seek immediate medical treatment and continues to play golf regularly, thus, the injury to Mr. Wimsatt's shoulder could not be serious. Specifically, Defendant complains that the State did not present medical testimony about the severity or cause of the injury. [BIC 15]

**{5}** "Our appellate courts, in evaluating the sufficiency of the evidence, have stated that circumstantial evidence and lay witness testimony is sufficient to establish the cause of death, as well as to establish great bodily harm." *State v. Platero*, 2017-NMCA-083, ¶ 15, 406 P.3d 557; *see State v. Bell*, 1977-NMSC-013, ¶ 15, 560 P.2d 925 (rejecting the defendant's argument that there was no medical testimony to prove great bodily harm to support a first degree kidnaping conviction and stating "the law does not require that great bodily harm be proved exclusively by medical testimony[; t]he jury is entitled to rely upon rational inferences deducible from the evidence" (internal quotation marks and citation omitted)).

**{6}** In the current case, Mr. Wimsatt, Defendant's uncle in his mid-to-late-sixties at the time of the incident, testified that Defendant unexpectedly barged into Mr. Wimsatt's house as he was making dinner and hit Mr. Wimsatt in the face so hard it knocked Mr. Wimsatt to the floor. [BIC 1-2] Mr. Wimsatt tried to soften his fall with his arm, but it injured his shoulder. [Id.] Mr. Wimsatt got up and Defendant wrestled him to the front of the house and out onto the front porch. [Id.] Mr. Wimsatt testified that he sought medical treatment for his shoulder a few months after the incident and had to get surgery and

physical therapy from a rotator cuff injury that resulted from Defendant's attack on him. [BIC 2] The State also presented medical documentation of Mr. Wimsatt's treatment and physical therapy. [BIC 15-16]

{7}     We are not persuaded that the evidence was inadequate. Mr. Wimsatt's testimony, based on his personal perception of his own shoulder, constitutes lay testimony evidence that can support the findings that Mr. Wimsatt's injury was severe and resulted in surgery and physical therapy. *See* Rule 11-701 NMRA; *Platero*, 2017-NMCA-083, ¶ 15. Similarly, Mr. Wimsatt's testimony, based on personal perception of his shoulder, can support a finding that his shoulder injury resulted when he fell during the altercation with Defendant. Thus, Defendant's argument about the absence of medical testimony goes to the weight of the evidence, not its legal adequacy. *See State v. Godoy*, 2012-NMCA-084, ¶ 14, 284 P.3d 410 (stating that where lay testimony is permissible, the qualifications of the lay witness to offer an opinion goes toward the weight of the evidence). The weight and credibility accorded lay testimony is a matter for the jury. *State v. Alberico*, 1993-NMSC-047, ¶ 33, 116 N.M. 156, 861 P.2d 192. On appeal, we do not reweigh evidence nor substitute our judgment on the weight or effect of the evidence for that of the jury. *State v. Wood*, 1994-NMCA-060, ¶ 4, 117 N.M. 682, 875 P.2d 1113. Viewing the evidence in light most favorable to the result and disregarding evidence and inferences contrary to the jury's verdict—including Mr. Wimsatt's refusal to seek immediate treatment and his use of his shoulders to golf—we hold that Mr. Wimsatt's testimony was sufficient to support Defendant's conviction of aggravated battery causing great bodily harm. *See Samora*, 2016-NMSC-031, ¶ 34; *Rojo*, 1999-NMSC-001, ¶ 19.

**Aggravated Burglary**

{8}     Defendant contends the State failed to present sufficient evidence to establish that he intended to commit aggravated battery upon his reentry into Mr. Wimsatt's home, for purposes of proving aggravated burglary. [BIC 18-19] We disagree.

{9}     Mr. Wimsatt testified that Defendant returned to his home after attacking him earlier in the evening. [BIC 2] This time, Defendant kicked in Mr. Wimsatt's storm door, causing glass to shatter inside the home. [Id.] Defendant wrestled Mr. Wimsatt, forced him to fall face down on the floor, began punching him in the back of the head, and was screaming and "acting crazy." [Id.] Defendant then got up and left the house. [BIC 2] Mr. Wimsatt identified police photographs of his injuries and the damage to his home. [BIC 3]

{10}    While there may not have been any direct evidence of Defendant's intent upon his reentry into Mr. Wimsatt's home, a defendant's "[i]ntent to injure need not be established by direct evidence but may be inferred from conduct and the surrounding circumstances." *See State v. Valles*, 1972-NMCA-076, ¶ 4, 84 N.M. 1, 498 P.2d 693. In fact, because "the element of intent involves the state of mind of the defendant it is seldom, if ever, susceptible to direct proof, and may be proved by circumstantial

evidence." *State v. Castañeda*, 2001-NMCA-052, ¶ 21, 130 N.M. 679, 30 P.3d 368 (internal quotation marks and citation omitted).

**{11}** The circumstantial evidence showed that Defendant stormed into Mr. Wimsatt's house, immediately attacked him, beat Mr. Wimsatt on the head while he was face down on the glass from the door Defendant shattered, screamed at Mr. Wimsatt, and left. This shows that Defendant acted with a singular purpose when he broke into Mr. Wimsatt's house—to severely and violently injure Mr. Wimsatt, for a second time in the same evening. "If there are reasonable inferences and sufficient direct or circumstantial facts, then the issue of intent is determinable by the jury and will not be reweighed by the reviewing court." *State v. Lucero*, 1982-NMCA-102, ¶ 6, 98 N.M. 311, 648 P.2d 350. We hold that the evidence was sufficient to prove that Defendant entered the home with the intent to commit aggravated battery.

## Criminal Damage to Property

**{12}** Defendant contends the evidence was insufficient to establish that Defendant intended to damage the property of Mr. Wimsatt for purposes of proving criminal damage to property. [BIC 19-21] Defendant submits that the evidence merely proves that there was a scuffle and Mr. Wimsatt's property was damaged. [BIC 20] We disagree. Mr. Wimsatt testified as an eyewitness that Defendant broke his television, damaged the cabinet on which the television was placed by kicking it, and that Defendant kicked in Mr. Wimsatt's glass door. [BIC 2-3] At trial, Mr. Wimsatt identified the property that was damaged from the police photographs of his home and testified that Defendant was not authorized to damage his property. [BIC 3] The jury could infer from the circumstantial evidence that Defendant acted with anger and intent to cause the damage to Mr. Wimsatt's property that was shown to the jury, and we will not disturb the jury's judgment on the weight of the evidence. *See Castañeda*, 2001-NMCA-052, ¶ 21; *Wood*, 1994-NMCA-060, ¶ 4; *Lucero*, 1982-NMCA-102, ¶ 6.

## Criminal Damage to the Property of a Household Member

**{13}** Defendant contends the evidence did not establish that the damage he caused to the property of Mr. and Mrs. Thurstonson, the parents of Defendant's ex-wife, exceeded $1,000, for purposes of proving criminal damage to the property of a household member. [BIC 3, 21-24] Defendant complains that because the Thurstonsons did not repair or replace the damaged property and instead sold their home, the evidence was inadequate to prove the cost of repair or replacement. [BIC 22] We disagree.

**{14}** Mr. and Mrs. Thurstonson both testified that, in trying to break into their home, Defendant got a ladder, climbed to the second level of the house, tore a screen from a door, damaged the door handle, then went to the back of the house, turned a hose on the back patio, broke letters off a decorative rock and damaged the rock, and broke their garage door windows with the broken-off letters. [BIC 4] Mrs. Thurstonson testified that Defendant also damaged their front door and patio lights. [BIC 6] Mr. Thurstonson testified that the doors were damaged beyond repair. [BIC 5] Mrs. Thurstonson testified

that they filed a claim with their home insurance company and the insurance company estimated the damage at $6,200. [BIC 6]

**{15}** Defendant does not refer us to any authority, and concedes there is no authority [BIC 23], that requires the damaged property to be replaced or repaired in order to prove the damage amount exceeded $1,000. *See State v. Widmer*, 2021-NMCA-003, ¶ 8, 482 P.3d 1254 (acknowledging that where a party does not cite to controlling authority, we may assume none exists). Also, nothing in the jury instructions required the jury to consider only what was actually replaced or repaired. [1 RP 198-99] *See* UJI 14-1510 NMRA (defining "[a]mount of damage" for purposes of the offense of criminal damage to property as "the difference between price at which the property *could ordinarily* be bought or sold . . . [before and] after the damage," or alternatively as the cost of repair or replacement, whichever is less) (emphasis added); *State v. Cobrera*, 2013-NMSC-012, ¶ 8, 300 P.3d 729 (explaining that the instruction provides two separate methods for evaluating property damage). Defendant does not provide a principled analysis for the requirement he seeks to impose on the State's evidentiary burden beyond Defendant's opinion of the case against him.

**{16}** We see no reason why Mr. and Mrs. Thurstonsons' testimony in combination with the insurance company's $6,200 estimate of the property damage would be insufficient to prove that the damage was over $1,000. *See Cobrera*, 2013-NMSC-012, ¶ 8 (explaining that instead of demonstrating the before and after value of the property, "the [s]tate could introduce other evidence of the cost of repair or replacement such as receipts, price quotes for repair services, or advertisements that state the cost of similar items"). We hold that the evidence was sufficient to support Defendant's conviction for criminal damage to the property of a household member over $1,000.

**{17}** For the reasons discussed above, we affirm the district court's judgment and sentence.

**{18}    IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**SHAMMARA H. HENDERSON, Judge**